UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MARTIN MURPHEY,<br>an individual,<br><br>                      *Plaintiff*,<br><br>v.<br><br>SONY MUSIC ENTERTAINMENT,<br>a Delaware general partnership,<br><br>                      *Defendant*. | Case No. _____<br><br>**ORIGINAL COMPLAINT FOR:**<br><br>**(1)** COPYRIGHT INFRINGEMENT;<br>     AND<br><br>**(2)** DECLARATORY RELIEF<br><br><br>**DEMAND FOR TRIAL BY JURY** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW Plaintiff Michael Martin Murphey and files this original complaint against Sony Music Entertainment, and would show this Court the following:

**I.**

**THE PARTIES**

    1. Plaintiff Michael Martin Murphey ("**Murphey**") is an adult individual who is a resident of Fort Worth, Texas. Mr. Murphey is an American artist, who has had a long career as a singer, songwriter, and musician. Since releasing his first debut album in 1972, Mr. Murphey has recorded numerous studio albums and sound recordings on several record labels, including CBS Records, a division of CBS Inc., whose successor is Sony Music Entertainment.

    2. Defendant Sony Music Entertainment ("**Sony**") is a Delaware general partnership with its current principal place of business and global headquarters located at 25 Madison Ave, New York, New York. Sony is considered one of the "Big Three" major record companies in the music

1

industry, as well as a global music conglomerate, and releases music under Columbia and Epic imprints, among many others. Sony's registered agent is Corporation Services Company, 251 Little Falls Drive, Wilmington, New Castle, DE 19808.

## II.

## JURISDICTION AND VENUE

3. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and also seeks declaratory relief with regards to several legal issues that arise from the language and interpretation of the Copyright Act.

4. This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1338(a).

5. This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§2201 and 2202.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because Sony is subject to personal jurisdiction in this District and because a substantial part of the events or omissions by Sony giving rise to the claims occurred in this District.

## III.

## FIRST CLAIM FOR RELIEF
## (Copyright Infringement)

7. Murphey hereby incorporates the allegations set forth in paragraphs 1 through 6 above, as though fully set forth herein.

8. This Court has held:

> Aspiring singers, musicians, authors and other artists - sometimes young and inexperienced and often not well known - tend to have little bargaining power in negotiating financial arrangements with recording companies, publishers, and others who promote and commercialize the artists' work. They often grant copyright in that

> work as part of the bargain they strike for promotion and commercialization. Accordingly, when an artistic work turns out to be a "hit," the lion's share of the economic returns often goes to those who commercialized the works rather than to the artist who created them. Section 203 [and 304(c)] of the Copyright Act of 1976 established a limited opportunity for artists to terminate the copyright ownership that they had granted to commercializers decades earlier in order to address this issue. The idea was that termination of these rights would more fairly balance the allocation of the benefits derived from the artists' creativity.
>
> Termination is effectuated by serving the grantee with written notice. This notice lists, among other information, the effective date of termination. Once the effective date of termination has passed, the grantee becomes the owner of the copyright and therefore holds exclusive right to reproduce and distribute the sound recordings.[1]

9. On September 13, 1976, Michael Martin Murphey entered into a recording agreement (the "**Recording Agreement**") with CBS Records, a division of CBS, Inc. ("**CBS**"). Sony is the successor of CBS.

10. Under the Recording Agreement, Murphey created and granted CBS the copyright rights to the following three albums entitled:

   i. *Flowing Free Forever*, which was released on October 22, 1976;

   ii. *Lonewolf*, which was released on February 24, 1978, and

   iii. *Peaks, Valleys, Honky-Tonks & Alleys*, which was released on March 2, 1979.

11. On February 19, 2016, Murphey, by and through his duly authorized agent, served a Notice of Termination upon Sony, with regards to the album entitled, *Lonewolf*, and Murphey caused such Notice of Termination to be recorded in the United States Copyright Office, on February 22, 2016, as document V9942 D684. The effective date of termination stated in such

---

[1] *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 432 (S.D.N.Y. 2020)

notice is February 24, 2018. A true and correct copy of the Notice of Termination for *Lonewolf* is attached hereto as **Exhibit A** and incorporated by reference.

12. On February 28, 2017, Murphey, by and through his duly authorized agent, severed a Notice of Termination upon Sony, with regards to the album entitled, *Peaks, Valleys, Honky-Tonks & Alleys*, and Murphey caused such Notice of Termination to be recorded in the United States Copyright Office, on April 4, 2017, as document V9932 D918. The effective date of termination stated in such notice is March 1, 2019. A true and correct copy of the Notice of Termination for *Peaks, Valleys, Honky-Tonks & Alleys* is attached hereto as **Exhibit B** and incorporated by reference.

13. The Notice of Termination for *Lonewolf* and the Notice of Termination for *Peaks, Valleys, Honky-Tonks & Alleys* are collectively referred to hereafter as the "**Murphey Notices**." The Murphey Notices were prepared pursuant to section 203 of the Copyright Act, applicable federal regulations, and the "gap grant" recommendations of the U.S. Copyright Office. At the time the Murphey Notices were prepared, Murphey did not have copy of the Recording Agreement. Nevertheless, the information that is stated in Murphey Notice is the information that was known to Murphey at the time such notices were served.

14. Despite Sony's receipt of the Murphey Notices, Sony flatly and unequivocally refused to honor it. On February 16, 2018, David Jacoby ("**Jacoby**"), the Senior Vice President of Business and Legal Affairs at Sony, sent a letter to Murphey's counsel, in which Jacoby stated Sony's legal position as to why Sony refused to honor the Termination Notice for *Lonewolf*. A true and correct copy of Jacoby's letter dated February 16, 2018 is attached as **Exhibit C**. Then, on February 28, 2019, Jacoby sent another letter to Murphey's counsel, in which Jacoby stated Sony's legal position as to why Sony refused to honor the Termination Notice for *Peaks, Valleys, Honky-Tonks*

*& Alleys*. A true and correct copy of Jacoby's letter dated February 28, 2019 is attached as **Exhibit D**.

15. Under §106 of the Copyright Act, the copyright owner of a sound recording has the exclusive right to reproduce and distribute the sound recordings, including, but not limited to, in phonorecords, and to exploit or authorize the exploitation of interactive streams and digital downloads of the sound recordings through subscription or non-subscription online digital music services.

16. The parties have been unable to reach an agreement to settle the copyright termination dispute as Sony continues to dispute the validity of the Murphey Notices and further refuses to relinquish its claim of copyright ownership to the subject sound recording works.

17. Pursuant to the Murphey Notices, Murphey is currently the owner of the United States copyright in and to the sound recordings comprising such albums.

18. By willfully continuing to exploit the sound recordings comprising the albums *Lonewolf* and *Peaks, Valleys, Honky-Tonks & Alleys*, after the respective dates of termination, Sony has infringed upon those recordings, and furthermore, the unlawful reproduction and distribution of the sound recording owned by Murphey as alleged hereinabove, and such action constitutes copyright infringement under the Copyright Act.

19. Sony's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Murphey.

20. As a direct and proximate result of Sony's infringements of Murphey's copyrights, pursuant to 17 U.S.C. §504(c), Murphey is entitled to recover up to $150,000.00 in statutory damages for each sound recording infringed. Alternatively, at Murphey's election, pursuant to 17 U.S.C. §504(b), Murphey is entitled to his actual damages, as well as all profits attributable to the

infringement, including but not limited to Sony's profits from infringement, as will be proven at trial.

21. Murphey is also entitled to recover his attorney's fees and costs pursuant to 17 U.S.C. §505, and prejudgment and post-judgment interest according to law.

22. Sony is causing, and unless enjoined by the Court will continue to cause, Murphey irreparable harm for which Murphey has no adequate remedy at law. Murphey is entitled to an injunction under 17 U.S.C. §502 prohibiting the continued infringement of the sound recordings identified in the Murphey Notices.

## IV.

### SECOND CLAIM FOR RELIEF
### (Declaratory Relief)

23. Murphey hereby incorporates the allegations set forth in paragraphs 1 through 22 above, as though fully set forth herein.

24. Pursuant to 28 U.S.C. §§2201 and 2202, a case of actual controversy within the jurisdiction of this court has arisen and now exists between Murphey and Sony, concerning their respective rights and duties, in that Murphey contends that:

> (A) Sound recordings cannot be considered "works made for hire," as that term is defined in the Copyright Act, because the definition set forth in §101 of the Copyright Act does not include sound recordings as being one of the types of works that can be a "work made for hire";
>
> (B) The release of sound recordings that were created by Murphey in "album" form, as is typical in the music industry, does not constitute a "contribution of a collective work" as that term is used in §101 of the Copyright Act, and does not serve to transform the sound recordings into "works made for hire";

(C) Murphey never granted the copyright rights in the sound recordings works to Sony or its predecessor as "works made for hire";

(D) The Murphey Notices are valid as Murphey has fully complied with 17 U.S.C. §203, the applicable federal regulations, and the "gap grant" recommendations of the Copyright Office for "gap grant" works by including the album title, the individual sound recording titles, the date of publication, and the corresponding copyright registration number, and other information, thereby giving Sony full notice of the sound recordings that are subject to termination;

25. Sony, on the other hand, contends that:

(A) The sound recordings at issue are "works made for hire" and therefore are not eligible for termination; and

(B) the Murphey Notices are defective.

26. Such a judicial determination of the rights and duties of the parties is necessary at this time, in that Sony has repeatedly denied Murphey's rights to own the United States copyright in and to the sound recordings identified in the Murphey Notices for the post-termination period. Sony's failure and refusal to acknowledge the validity of the Murphey Notices has damaged Mr. Murphey and is in direct contradiction of the "second chance" guaranteed by the Copyright Act.

## V.

## DEMAND FOR JURY

27. Plaintiff Cuevas asserts his right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

# VI.

# PRAYER FOR RELIEF

28. WHEREFORE, Plaintiff Michael Martin Murphey prays for Judgment against Sony as follows:

A. For actual damages according to proof, or at Murphey's election, statutory damages in the amount of $150,000 per infringement, or according to proof;

B. For declaratory relief, regarding the legal issues described in ¶¶ 23 through 26 above;

C. A temporary, preliminary, and permanent injunction enjoining and restraining Sony and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, and each of them, from continued denial and disregard of the Murphey Notices;

D. For pre- and post-judgment interest;

E. For such fees and costs (including reasonable attorney's fees) incurred herein as permitted by law; and

F. For such other and further relief as this Court deems just and proper.

Dated: July 20, 2022                    Respectfully submitted,

 

_____
David Chase LanCarte
LanCarte Law, PLLC
2817 West End Ave., Suite 126-276
Nashville, Tennessee 37203
Tel: 214-935-2430
Fax: 214-935-2450
chase@lancartelaw.com
**ATTORNEY FOR PLAINTIFF
MICHAEL MARTIN MURPHEY**